UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Bestop, Incorporated,

       Plaintiff(s),

v.

Tuffy Security Products, Inc.,

       Defendant(s).

_____/

Case No. 13-10759

Honorable Nancy G. Edmunds

## ORDER AND OPINION GRANTING BESTOP'S MOTIONS TO DISMISS COUNTERCLAIMS [14, 18]

Plaintiff Bestop, Incorporated has filed this patent infringement suit against Defendant Tuffy Security Products, Incorporated.  (Dkt. 1.)  This order and opinion addresses the breach of contract and fraud counterclaims that Tuffy has filed against Bestop.  Bestop has filed two motions to dismiss Tuffy's counterclaims.  After Bestop's first motion to dismiss, Tuffy amended its counterclaim, dropping two of the claims that Bestop attached in its first motion and attempting to address the deficiencies in its counterclaim that Bestop pointed out in its first motion to dismiss.[1]  Bestop then filed a second motion to dismiss, addressing Tuffy's breach of contract and fraud claims, while not moving to dismiss the patent

---

[1]On October 9, 2013, Tuffy, in conjunction with filing a response to Bestop's first motion to dismiss Tuffy's counterclaims, filed an amended counterclaim. (Dkt. 17.)  In its amended counterclaim, Tuffy dropped two of its original counterclaims: wrongful interference with a prospective business advantage and unfair competition under the Lanham Act.  (Tuffy's 1st Resp. at 3.)

      Bestop notes that Tuffy amended its counterclaim "as a matter of course" pursuant to Federal Rule of Procedure 15(a)(1)(B).  (Bestop's 2d Mot. to Dismiss at 1.)

      Bestop argues that, despite Tuffy's attempt at avoiding a motion to dismiss, Tuffy's amended counterclaim still fails to state plausible claims of relief for breach of contract and fraud.  (Bestop's 2d Mot. at 1.)

infringement claims.  (Dkt. 18.)  Bestop argues that Tuffy's counterclaim still fails to state a claim for breach of contract or fraud.

Because the Court finds that Tuffy has failed to supply the proper factual support for its breach of contract and fraud claims and the statute of limitations bars Tuffy's fraud claim, the Court GRANTS Bestop's motions to dismiss.[2]

## I.   Facts

### A.  The parties

In 1989, Shawn P. Gregory started Tuffy.  (Am. Countercl. ¶ 27.)  He remains its president.  (*Id.*)  Gregory founded Tuffy to "manufacture and sell a lockable, secure, console that [] Gregory invented while he was an engineering student.  (*Id.*)  Gregory designed the console for use in convertible Jeep vehicles.  (*Id.*)  The console allows Jeep owners to mount and store their stereos in the console, which prevents stereo theft.  (*Id.*)

Gregory manufactured the Tuffy console "at a modest manufacturing facility" that Gregory rented for the purpose of manufacturing the console.  (Am. Countercl. ¶ 28.)  Tuffy states that the console was successful beyond Gregory's expectations.  (*Id.*)  Tuffy adds that the sales increased so rapidly that Gregory quit school to concentrate on meeting the demand for the consoles.  (*Id.*)

Tuffy states that it still manufactures Gregory's console, as well as other secure enclosures for Jeep and other vehicles.  (Am. Countercl. ¶ 29.)  Tuffy states that it manufactures all of its products at its principal place of business in Cortez, Colorado.  (*Id.*)  Tuffy maintains that, despite console copies existing in the marketplace, Tuffy's console

---

[2]The first and second motions to dismiss are, for all relevant purposes, identical and will rise and fall together.  The Court only addresses the second motion.

still sells well because of "its high quality," "despite being sold at about twice the price of the low-cost copies." (*Id.*)

Bestop is a Delaware corporation with its advertised headquarters in Broomfield, Colorado. (Am. Countercl. ¶ 32.) For over fifty years, Bestop has been a supplier of fabric tops for convertible Jeeps. (*Id.*)

Bestop is a subsidiary of Magna International, Inc., which has its headquarters in Troy, Michigan. (Am. Countercl. ¶ 33.)

In 1996, Magna purchased Bestop. (Am. Countercl. ¶ 34) After Magna's purchase, "Bestop began investigating ways to reduce its cost of production of its existing product line." (*Id.* ¶ 35.)

## B. Facts relevant to the motions to dismiss Tuffy's counterclaims

In 2000, Bestop approached Tuffy "and represented to Tuffy that it was interested in purchasing Tuffy." (Am. Countercl. ¶ 36.) Tuffy states that it signed a confidentiality agreement with Bestop and therefore allowed Bestop to visit Tuffy's operations in Cortez, Colorado. (*Id.* ¶ 37.)

The confidentiality agreement, dated August 11, 2000, states that it is between Tuffy and Bestop. (Am. Countercl. Ex. 1.) In it, Tuffy agreed to furnish confidential information to Bestop "solely for the purposes of" purchasing Tuffy. (*Id.*) The agreement indicates that Bestop agreed to "review, examine, inspect or obtain such information only for the purposes described . . . and to otherwise hold such information confidential and secret pursuant to the terms of this agreement." (*Id.*) In the agreement, Bestop agreed to the following:

3

- to hold all confidential and proprietary information or trade secrets ("information") in trust and confidence and to use it only for the contemplated purpose, and shall not use it for any other purpose or disclose it to any third party under any circumstances whatesoever;

- to not copy or retain any of the written information supplied;

- to return all written notes, photographs, or memoranda to Tuffy at the end of the discussions or upon Tuffy's demand;

- to not disclose any information "to any employee, consultant or third party unless said party agrees to execute and be bound by the terms of this agreement," unless approved by Tuffy; and

- that it acknowledged that "the information disclosed . . . is proprietary or trade secrets and in the event of any breach, [Tuffy] shall be entitled to injunctive relief as a cumulative and not necessarily successive or exclusive remedy to a claim for monetary damages."

(*Id.*)  The confidentiality agreement states that the agreement "shall be binding upon and inure to the benefit of their parties, their successors and assigns[.]" (*Id.*)  Paul Valas, of Bestop, signed as "First Party" to the agreement.  No other party signed the agreement. (*Id.*)

Tuffy states that it allowed Bestop to visit its operations, view its current line of products, view information about Tuffy's future planned products, and view Tuffy's books and records.  (Am. Countercl. ¶ 37.)

4

Tuffy maintains that after Bestop's visit to the operations, Bestop never offered to purchase Tuffy, and Tuffy never heard from Bestop about its interest in purchasing Tuffy. (Am. Countercl. ¶ 38.)

Tuffy further maintains that it "received no communications from Bestop or Magna after Bestop's (and Magna's) visit of Tuffy's operations until this dispute arose."  (Am. Countercl. ¶ 39.)

## II.   Standards of review

### A.  Rule 12(b)(6) motion to dismiss standard of review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  See *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for

5

relief survives a motion to dismiss." *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

## B. Rule 9(b) fraud particularity standard of review

To meet the particularity requirements of Rule 9(b), a plaintiff must "(1) specify the statements that [Plaintiff] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation marks and citation omitted).  At a minimum, a plaintiff "must allege the time, place and contents of the misrepresentations upon which [he] relied." *Id.*  A plaintiff "also must allege facts from which it could be concluded that his reliance was reasonable." *Issa v. Provident Funding Group, Inc.*, No. 09-12595, 2010 WL 538298, *5 (E.D. Mich. Feb. 10, 2010) (citing *Novak*

6

*v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553-54 (Mich. Ct. App. 1999)). "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendant[] to answer, addressing in an informed way the [plaintiff's] claim of fraud." *Kashat v. Paramount Bancorp, Inc.*, No. 09-10863, 2010 WL 538295, at *4 (E.D. Mich. Feb. 10, 2010) (citation omitted; alterations in original) (dismissing the plaintiffs' complaint because it did "not contain allegations concerning the time and place of the alleged misrepresentations" and stating that "[the plaintiffs] cannot merely recite a statute, claim it has been violated, and expect to survive a motion to dismiss."). *See also Ass'n of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citation omitted) (holding that a plaintiff's pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

## III.    Analysis

Although Bestop filed a straightforward motion to dismiss, Tuffy, in its second reply, raises a choice-of-law issue that the Court finds it should consider before reaching Bestop's arguments on whether Tuffy has asserted plausible claims for breach of contract and fraud.

### A.   Choice-of-law

Tuffy has raised a choice-of-law issue in its response; Bestop addresses the issue in its reply. (Tuffy's 2d Resp. at 9; Bestop's 2d Reply at 3.) The Court finds its necessary to address the raised choice-of-law issue.[3] Given that a conflict exists between Colorado and

---

[3]Tuffy argues that, since Bestop did not, prior to filing its motions to dismiss, raise the choice-of-law issue, that Bestop has deprived Tuffy of "meaningful opportunity to respond

Michigan law, and because the Court finds that Colorado has a more significant interest in this case's outcome, the Court applies Colorado law and Colorado's statute of limitations to this case.

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 499 F. App'x 559, 561 (6th Cir. 2012) (citation omitted). But, a court must first determine whether a true conflict exists between two states's laws before conducting a choice-of-law analysis, for there is no injury if the states's laws do not conflict with each other. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985).

### 1. Michigan and Colorado's statute of limitations for contract and fraud claims conflict

In Colorado, a plaintiff asserting a breach of contract claim must prove: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 529 (Colo. Ct. App. 2011) (citation omitted).

Breach of contract has a three-year statute of limitations in Colorado. *Neuromonitoring Assoc. v. Centura Health Corp.*, ___ P.3d ___, 2012 WL 3518017, at *4 (Colo. Ct. App. Aug. 16, 2012) (citations omitted).

In Michigan, the elements of a breach of contract claim are: (1) that there was a contract, (2) that the other party breached the contract and (3) that the party asserting

---

. . . in this briefing cycle." (Tuffy's 2d Resp. at 9.) The Court disagrees. The Court finds that it has the ability to determine the appropriate law to apply to this case for the motions to dismiss. The Court finds that the facts that are relevant to its analysis are undisputed.

breach of contract suffered damages as a result of the breach. *Shore Fin. Serv. v. Lakeside Title and Escrow Agency*, 301143, 302707, 302723, 2013 WL 2223781, at *3 (Mich. Ct. App. May 21, 2013) (citation and quotation marks omitted).

In Michigan, the statute of limitations for a breach of contract claim is six years. Mich. Comp. Laws § 600.5807(8).

In Colorado, a plaintiff seeking to prevail on a fraud claim must establish five elements: (1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff. *Bristol Bay Prod., LLC v. Lampack*, 312 P.3d 1155, ¶ 26 (Colo. 2013) (citation omitted).

In Colorado, the statute of limitations for a fraud claim is three years; a plaintiff must bring his fraud claim "within three years of the date when the misrepresentation was discovered or could have been discovered with reasonable diligence." *Bolinger v. Neal*, 259 P.3d 1259, 1269 (Colo. Ct. App. 2010) (citations omitted).

In Michigan, the elements of a claim for fraudulent misrepresentation are: (1) that the defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976) (quoting

9

*Chandler v. Heigho*, 175 N.W. 141, 143 (Mich. 1919)).  "[T]he absence of any one of [these elements] is fatal to a recovery."  *Id.*

In Michigan, the statute of limitations for a fraud claim is six years.[4]  Mich. Comp. Laws § 600.5813.

The Colorado and Michigan statutes of limitations conflict.  The Court therefore must look to Michigan's choice-of-law rules to see whether the Court should apply Colorado or Michigan's statute.  *Professional Consultation Serv., Inc. v. Scaefer & Strohminger Inc.*, 412 F.App'x 822 (6th Cir. 2011).

## 2. The Court applies Colorado contract law, and the Colorado statute of limitations

"[I]n determining what [contract] law to apply, 'Michigan courts balance the expectations of the parties to a contract with the interests of the states involved.'" *Professional Consulting Serv. v. Schaffer & Strohminger, Inc.*, 08-12886, 2009 WL 2960476, at *10 (E.D.Mich. Sept. 14, 2009) (Edmunds, J.) *aff'd* 412 F.App'x 822 (6th Cir. 2011).  Michigan courts use the Restatement (Second) Conflict of Laws § 188(2) factors to determine which state has the prevailing interest in having its law applied.  *Id.*  Those factors include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the

---

[4]Bestop states that Michigan's statute of limitations fraud is three years. Bestop cites Michigan Compiled Law § 600.5805(10).  But that statute applies to injuries to persons or property.  Michigan courts have held that Michigan Complied Law §  600.5813's six-year statute of limitations applies to fraud claims.  *See Boyle v. General Motors Corp.*, 661 N.W.2d 557 (Mich. 2003) (holding that six-year statute of limitations applied to fraud claims.).

domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* (citation omitted).

"As a general rule, the validity and construction of a contract is controlled and is to be determined by the law of the situs, the place where the contract was entered into. A contract executed in one state or jurisdiction but intended to be performed in another state or jurisdiction is governed by the law of the place of performance." *Allmand Assoc., Inc. v. Hercules, Inc.*, 960 F.Supp. 1216, 1228, n. 9 (E.D.Mich. 1997) (Gadola, J.) (citations omitted).

Tuffy argues that Colorado law should apply to this suit. (Tuffy's 2d Resp. at 9.) Tuffy argues so, stating that: "[t]wo Colorado businesses entered into this agreement in Colorado, and Bestop went to Tuffy's facilities in Colorado where Tuffy fully performed its obligation under the agreement." (*Id.*) Those connections, Tuffy maintains, give Colorado a "significant interest in the application of its contract and fraud laws to this dispute." (*Id.*) Tuffy urges the Court to not ignore Colorado's interest. (*Id.*) Tuffy finally argues that, since the Court has yet to rule on the choice-of-law issue, that Bestop has denied it "meaningful opportunity to respond to [the issues] in this briefing cycle." (*Id.*)

Bestop argues that Michigan law applies to this case. (Bestop's 2d Reply at 5.) It argues so because Bestop is headquarted and domiciled in Michigan and because Tuffy has alleged that there is a continuing duty to perform under the contract that takes place in Michigan. (*Id.* 5-6.)

11

After weighing the Restatement factors, the Court agrees with Tuffy. Colorado's interest in this case is far greater than Michigan's; the Court will therefore apply Colorado contract law and the Colorado breach of contract statute of limitations.[5]

Here, assuming a contract exists, two Colorado companies negotiated the confidentiality agreement in order to explore the idea of purchasing a Colorado company. The Court notes Bestop's argument, that it is a Michigan corporation now and that Tuffy has alleged a continuing violation. But, the Court finds that the factors weigh in favor of applying Colorado law. The fact that Bestop is now owned by a Michigan corporation is a factor, but it is a small factor, given that, at the time of the contracting, all the parties involved were in Colorado. The Court further notes the continuing violation factor. While that factor does create a Michigan interest, it equally creates a Colorado interest since both Colorado and Michigan foster one of the parties. That factor weighs in neither party's favor.

Colorado contract law applies. The statute of limitations for this breach of contract action is therefore three years.

### 3. The Court applies Colorado tort law and Colorado's statute of limitations for fraud

In a tort action, such as fraud, Michigan courts apply Michigan law unless a "rational reason" to do so otherwise exists. *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (citation omitted). Michigan courts use a two-step test to determine

---

[5]The Court recognizes the axiomatic result of the choice-of-law section, for Tuffy advocates that Colorado law should apply, yet the Colorado breach of contract statute of limitations does not favor Tuffy. Bestop argues that Michigan law should apply, although Michigan's statute of limitations favors Tuffy. Both parties should have more fully researched the issue before they made their arguments. Regardless, Tuffy raised the issue and the Court fully finds that it can rule on this issue at this time.

whether a rational reason exists to displace Michigan law. *Id.* (citation omitted).  A court must first "determine if any foreign state has an interest in having its law applied." *Id.* (citation omitted).  "If no state has such an interest, the presumption that Michigan law will apply cannot be overcome.  If a foreign state does have an interest in having its law applied, [a court] must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.* (citation omitted).

Here again, Colorado law applies.  Colorado has an interest in having its law applied when one of its citizens is harmed there. *See Standard Fire Ins.*, 723 F.3d at 695 (stating, "interest weighing is required because a foreign state undeniably has an interest in having its law applied to an action filed by one of its citizens stemming from injury sustained there.") (citations omitted).  The alleged fraud in this case initially began in, and harmed Tuffy in, Colorado.

While the Court again recognizes that Michigan has an interest in this case because a business that is headquarted in Michigan is involved in this case, the Court finds that that interest is not superior to Colorado's protection of its citizens. *See Standard Fire Ins.*, 723 F.3d at 695 (citing and discussing a Michigan case that conducted the interest-weighing approach that held that the connections to Michigan–the fact that the defendant's headquarters was in Michigan and the fact that Michigan was the forum state, did not defeat California's superior interest given that, in the car accident case, the plaintiff lived in California, the car was registered in California, and the accident occurred in California.).

Colorado's fraud law and statute of limitations for fraud applies.

Bestop points to *Inland Waters Pollution Control, Inc. v. Jigawon, Inc.*, 05-74785, 2008 WL 205209 (E.D.Mich. Jan 22, 2008) (Lawson, J.), to support its argument that Michigan

13

law should apply to this case.   (Bestop's 2d Reply at 3.)   *Inland*, though, is distinguishable. The *Inland* court faced an analogous issue–what law to apply to breach of contract and a fraud claims.   There, the defendants argued that Texas law applied to the fraud and misrepresentation claims because they were citizens of Texas and the tort took place in Texas.   *Id.* at *8.   The district court rejected the defendants' arguments, stating that some of the tortious action actually occurred in Michigan and that the defendants' citizenship, alone, did "not amount to an interest that overc[ame] the presumption that the law of the forum state should be applied."   *Id.*   The court also noted that the defendants had not pointed to any substantial difference between Michigan or Texas law.   *Id.*   That failure weighed in favor of applying Michigan law, the law of the forum state, because courts apply the forum's law when there is not a conflict between laws.   *Id.* (citation omitted).   The court then discussed which contract law to apply.   *Id.* The court reviewed the § 188 factors and stated, conclusorily, that all of the factors either favored Michigan or were neutral.   *Id.* Here, the two states' laws are different.   Weighing the factors, the Court finds that Colorado's interest is greater.

## B.  Breach of contract

Bestop moves the Court to dismiss Tuffy's breach of contract counterclaim. Bestop argues that Tuffy has not pleaded the facts necessary to support a claim and that the statute of limitations bars the counterclaim.  The Court agrees with Bestop, Tuffy has not offered sufficient information to support its claim.  Tuffy offers the most basic conclusory allegations of a breach of contract claim.  The Court dismisses the claim.

Tuffy alleges that the confidentiality agreement between Bestop and Tuffy is a valid and enforceable contract.  (Am. Countercl. ¶ 112.)  Tuffy states that Paul Valas, Bestop's

14

president and general manager at the relevant time, signed the confidentiality agreement. (*Id.*) Tuffy maintains that it provided "Bestop with access to Tuffy's confidential information relating to the affairs fo Tuffy under the terms of the [c]onfidentiality [a]greement." (*Id.* ¶ 113.) Tuffy claims that Bestop agreed to use the confidential information relating to Tuffy's affairs for the limited purpose of purchasing Tuffy. (*Id.* ¶ 114.) Tuffy states that Bestop "agreed not to use the information for any other purpose or to disclose the information to any third party under any circumstances whatsoever." (*Id.* ¶ 115.) Tuffy also states that Bestop "agreed to return the confidential information." (*Id.* ¶ 116.)

Tuffy alleges that Bestop "breached and continues to breach" the confidentiality agreement "by using information obtained from its visit to Tuffy's facilities in Cortez to expand its line of products into the secure enclosure market to compete directly with Tuffy." (Am. Countercl. ¶ 117.) Tuffy further claims that Bestop breached and continues to breach the agreement "by disseminating the information to employees and others [who] were not involved in Bestop's decision of whether to purchase Tuffy." (*Id.* ¶ 118.) Tuffy specifically points to the agreement's fourth paragraph in alleging that Bestop breached the agreement by disseminating information to others without first obtaining Tuffy's approval. (*Id.* ¶ 119.) Tuffy maintains that Bestop also breached the agreement by using the information it obtained from its visit to Tuffy's operations "in its decisions to enter the market for security products." (*Id.* ¶ 120.) And Tuffy finally alleges that Bestop breached the agreement "by using the information obtained from the visit to Tuffy's facilities and protected through [the agreement] in its decision to buy the '794 patent." (*Id.* ¶ 121.)

15

Tuffy claims that it "did not have reason to suspect a breach by Bestop until recently, when Bestop began offering directly competing products, such as Bestop's product No. 42703." (Am. Countercl. 123.)

Tuffy maintains that it has suffered and continues to suffer economic damages due to Bestop's breach of the agreement. (Am. Countercl. ¶ 122.) Tuffy seeks compensatory and exemplary damages for Bestop's alleged breach. (*Id.* ¶ 124.)

Bestop states that Tuffy has failed "to identify the date of any alleged breach of the confidentiality agreement." (Bestop's 2d Mot. at 6.) Bestop states that Tuffy has only provided August 11, 2000 as the date of entering the confidentiality agreement. (*Id.*) Bestop argues that Tuffy alleges that the first breach of contract occurred in August, 2000. (*Id.*)

Bestop argues that Tuffy's breach of contract counterclaim fails because Tuffy does not identify "even one specific document" that Bestop allegedly took. (Bestop's 2d Mot. at 6.)

Bestop illustrates: it states that Tuffy has not provided any factual support as to what it allegedly took that was confidential documents or information or why the information was confidential. (Bestop's 2d Mot. at 11.) Bestop asserts that Tuffy has made only conclusory allegations as to what Bestop allegedly took: "information about Tuffy's future planned products;" "Tuffy's books and records;" and "confidential information relating to the affairs of Tuffy." (*Id.*) Bestop questions: "What books? What records? What purported confidential information was taken and used by Bestop?" (*Id.* at 11-12.) Bestop states that "[s]ince Tuffy alleges documents were taken, it must have some capability to identify the

16

'confidential documents[.]'" (*Id.* at 12.)    Bestop maintains that Tuffy has made no identification efforts.  (*Id.*)

Bestop also argues that the breach of contract claim is outside of Michigan's six-year statute of limitations.  (Bestop 2d Mot. at 12.)  Bestop states that Tuffy's breach of contract claim accrued in 2000, "shortly after" Bestop's visit to Tuffy, since Bestop did not purchase or offer to purchase Tuffy and because Tuffy would have known that Bestop had the documents.  (*Id.* at 12-13.)

Bestop points out that Tuffy is attempting to file a breach of contract claim thirteen years after the date of accrual and seven years after the statute of limitations bars the claim.  (Bestop 2d Mot. at 13.)

Bestop argues that Tuffy, recognizing its pleading deficiency in its first counterclaim, attempted to correct the deficiency by adding a "continuing violation" doctrine assertion in its amended counterclaim.  (Bestop's 2d Mot. at 13.)  Bestop suggests that Michigan law does not recognize a continuing violation doctrine for breach of contract actions nor does it follow a discovery rule.  (*Id.*)

Here, the Court finds that Tuffy has not stated a plausible claim of relief for breach of the confidentiality agreement.  Tuffy has only made conclusory allegations that Bestop breached the confidentiality agreement.   Tuffy states that Bestop took confidential information, which Tuffy alleges breaches the agreement, and put that information to use in creating the allegedly infringing patent and product.  But Tuffy fails to put forth any factual support for its allegations.  Tuffy does not assert what information Bestop took, although, as Bestop states, Tuffy would or should know.  Tuffy also does not assert to what use Bestop put the allegedly breaching information.   These failures require a finding that

17

Tuffy has not stated a plausible claim.  Tuffy cannot simply say that Bestop breached the contract by taking information and creating an infringing product.  Tuffy must give Bestop notice of what Tuffy is suing Bestop for.  And Tuffy has failed to do so with the requisite amount of factual support.

The Court therefore dismisses the contract counterclaim for failure to state a claim.

Bestop also argues that the statute limitations bars Tuffy's breach of contract claim.  As stated above, Colorado has a three-year statute of limitations for such claims.  While the Court rests its dismissal on Tuffy's failure to state a claim, the Court finds that Bestop has raised the statute of limitations and Tuffy has not provided any response that the Court finds would warrant applying Colorado's equitable tolling or Colorado's continuing breach law.[6]

---

[6]Colorado equitably tolls statutes of limitations in limited situations in "which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff form filing his or her claim despite diligent efforts." *Deutsche Bank Trust Co. Americas v. Samora*, ___ P.3d ___, 2013 WL 2338183, at * 5 (Colo. Ct. App. May 23, 2013) (citations omitted).  Colorado courts hold that "[w]hen a rigid application of the statute of limitations leads to an unjust result, courts may properly fashion an equitable exception to the limitations period[.]" *Id.* (citation omitted). "Equitable tolling of a statute of limitations is limited to circumstances in which either a defendant wrongfully impedes a plaintiff's ability to bring the claim, or truly extraordinary circumstances prevent a plaintiff from filing the claim despite diligent efforts." *Neuromonitoring Assoc. v. Centura Health Corp.*, ___ P.3d ___, 2012 WL 3518017, at *4 (Colo. Ct. App. Aug. 16, 2012) (citations omitted)  "Once a statute of limitations defense has been raised, the plaintiff bears the burden of establishing the factual foundation for equitable tolling." *Id.* (citation omitted).

Colorado recognizes the continuing nature of certain breach of contract claims. *Neuromonitoring*, 2012 WL 3518017, at *6 (citations omitted).  The continuing nature doctrine stands for the proposition that a contract that imposes continuing obligations upon a defendant and the defendant's conduct causes "repeated and successive breaches," even if the initial breach was outside of the statute of limitations, the plaintiff could file suit for the breaches that took place within three-years of the filing of a complaint; the three years being the statute of limitations period. *Id.*  Colorado courts have applied the doctrine

### C.  Fraud

Bestop moves the Court to dismiss the fraud counterclaim.  Bestop argues that Tuffy has not offered the factual support necessary for a plausible claim.  Bestop also argues that the fraud statute of limitations bars the fraud claim.  The Court again agrees with Bestop. Tuffy has not alleged the fraud claim with specificity and the statute of limitations bars the fraud claim.  The Court also dismisses this counterclaim.

Tuffy states that Bestop intentionally misled it "as to whether the purpose was to buy Tuffy and to abide by the terms of [the confidentiality agreement.]" (Am. Countercl. ¶ 126.) Tuffy explains that when Bestop signed the confidentiality agreement on August 11, 2000, "Bestop was not actually interested in purchasing Tuffy, but was only interested in obtaining product information data, cost data, profit margin data, for its own use in developing products for entering the market of security enclosures and competing directly with Tuffy." (*Id.* ¶ 127.)

Tuffy alleges that Bestop's "assertions for the purpose of its visit and requests for documents centered about Tuffy's products and finances were false at the time that the statements were made, and made with the intent that Tuffy act upon Bestop's requests for information about Tuffy's operations, and disclose the information so that Bestop may use the information obtained from Tuffy."  (Am. Countercl. ¶ 127.)

---

to "a variety of different contracts," including: the contractual obligation of insurer to defend an insured; contract for payments to be calculated and paid on a period basis; contract providing for right to share in a divisible surplus to be determined annually and credited as divided; covenant not to compete and agreement not to use business name; etc.  *Id.* (citations omitted).

Tuffy further alleges that Bestop never returned any of the confidential documents that it provided pursuant to the confidentiality agreement.  (Am. Countercl. ¶ 128.)  Tuffy adds that Bestop "never intended to return the confidential information, and continues to retain and use the confidential information."  (*Id.* ¶ 129.)

Tuffy claims it relied upon Bestop's representations and "disclosed its confidential product design and development information and financial information."  (Am. Countercl. ¶ 130.)  Tuffy states that "Bestop has used and continues to use and/or benefit from the information obtained through its fraud."  (*Id.* ¶ 131.)

Tuffy alleges that it has "suffered damages in its loss of valuable, competitor-sensitive, confidential product design and development information and financial information, which facilitated Bestop's entry into the security products market."  (Am. Countercl. ¶ 132.)  Tuffy seeks compensatory and exemplary damages.  (*Id.* ¶ 133.)

Bestop argues that Tuffy has not alleged "any detail about the individuals responsible for the misrepresentations, when the misrepresentations occurred, and where."  (Bestop's 2d Mot. at 7.)  Bestop explains that Tuffy centers its fraud claim around the alleged taking of documents in 2000 and the alleged failure to return the documents in 2000.  (*Id.*)

Bestop also argues that Tuffy has not met Rule 9(b)'s pleading requirements. (Bestop's 2d Mot. at 14.)  Bestop suggests that Tuffy has not alleged the time, place, or content of the alleged misrepresentations, or the fraudulent scheme, intent, or injury.  (*Id.*) Bestop adds that Tuffy has not even identified who made the alleged fraudulent statements.  (*Id.*)

Bestop illustrates: it states that Tuffy has not provided any factual support as to what it allegedly took that was confidential documents or information or why the information was

20

confidential.  (Bestop's 2d Mot. at 11.)  Bestop asserts that Tuffy has made only conclusory allegations as to what Bestop allegedly took: "information about Tuffy's future planned products;" "Tuffy's books and records;" and "confidential information relating to the affairs of Tuffy."  (*Id.*)  Bestop questions: "What books? What records? What purported confidential information was taken and used by Bestop?"  (*Id.* at 11-12.)  Bestop states that "[s]ince Tuffy alleges documents were taken, it must have some capability to identify the 'confidential documents[.]'"  (*Id.* at 12.)  Bestop maintains that Tuffy has made no identification efforts.  (*Id.*)

Bestop again argues that Michigan's statute of limitations claim for fraud also bars Tuffy's claim.  (Bestop's 2d Mot. at 15.)  Bestop maintains that the action accrued in 2000, since the documents taken were part of the fraud, and that Tuffy therefore had to bring the claim by 2003 (the Court notes, against that the Michigan statute of limitations for fraud is six years.  Following Bestop's argument, then, it should have stated 2006 in this last sentence.)

Tuffy responds that it has met Rule 9(b)'s pleading requirements and that its fraud claims falls within the statute of limitations.  (Tuffy's 2d Resp. at 6-7.)  Tuffy explains that its amended counterclaim identifies Paul Valas as the person who made the specific representations, which were representations of an interest to purchase Tuffy and a representation that the confidential proprietary information will not be used in an unauthorized manner.  (*Id.*)  Tuffy adds that "[i]t is likewise clear that the misrepresentations occurred from 2000 until the present and were made in Colorado."  (*Id.* at 7.)  Tuffy claims that "[t]he contract and Bestop's failure to discuss the purchase of Tuffy reveal [] Bestop's fraudulent intent and scheme."  (*Id.*)

As to the statute of limitations argument, Tuffy responds that "Bestop did nothing to retract its representations from 2000 to the present, and as such Bestop was representing that the obligations from the contract were still in force." (Tuffy's 2d Resp. at 7.)  Tuffy adds that "[a]s it stands, Bestop is currently representing that it will not use the confidential proprietary information for an unauthorized purpose by nature of the binding confidentiality agreement between the two parties."  (*Id.*)

The Court rejects Tuffy's argument.

Tuffy still fails to meet Rule 9(b)'s particularity requirements and the Court finds that Colorado's fraud statute of limitations bars Tuffy's fraud claim.

Again, to meet the particularity requirements of Rule 9(b), Tuffy must "(1) specify the statements that [Tuffy] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation marks and citation omitted).   Here, Tuffy has alleged that Paul Valas made the fraudulent statement that Bestop was interested in purchasing Tuffy and that Bestop would not use the confidential information that it received inappropriately.  Tuffy further has alleged that Valas made the statements the day that he visited Tuffy's operations at Tuffy's facility in Colorado.  Those allegations satisfy the first three Rule 9(b) particularity requirements.  But the Court finds that Tuffy has failed to meet Rule 9(b)'s requirement that it explain why the statements were fraudulent.  Tuffy states that Valas made representations of an interest to purchase Tuffy and a representation that the confidential proprietary information would not be used in an unauthorized manner.

22

Tuffy has failed to allege why the representations Valas made were false.   The conclusory allegation that the confidentiality agreement required Bestop to purchase Tuffy is not a sufficient allegation.   There is no indication that any agreement to purchase Tuffy ever existed or was agreed upon.   Tuffy also has not pointed to any statement that Valas made that indicates that Bestop visited Tuffy for the fraudulent purpose of gaining information to use  for its own purposes.   Tuffy does not sufficiently allege how Bestop's actions were fraudulent.   Tuffy alleges that Bestop took a binder of information and used that information to create its infringing product.   But that allegation is conclusory.   The Court agrees with Bestop's argument that, if Tuffy knew that Bestop 'stole' a binder of confidential information, that Bestop would know what information was in the binder and would be able to allege how Bestop's statement that it would not abuse the information it allegedly received was fraudulent.   Because Tuffy has not done so, Tuffy fails to allege its fraud claim with particularity and the Court finds that Tuffy has not stated a plausible claim of relief.   The Court dismisses the fraud claim.

The Court also finds that Colorado's three-year statute of limitations for fraud bars this claim.   Regardless of the exact date the claim accrued, the statute of limitations bars Tuffy's fraud claim.   In Colorado, "a cause of action for fraud . . . accrues 'on the date such fraud . . . is discovered or should have been discovered by the exercise of reasonable diligence." *SMLL, LLC v. Daly*, 128 P.3d 266, 269 (Colo. Ct. App. 2005) (citation omitted). Here, assuming that Paul Valas made material misrepresentations that Bestop was going to purchase Tuffy, a reasonable person or company would have known that that allegation was false well within one year after Valas made the statement.   Tuffy cannot make a credible argument that it is still under the assumption that Bestop is going to discuss

23

purchasing Tuffy.  Nor does the Court find that Tuffy can make a credible argument that, after a year passed, without requesting or receiving its binder of confidential materials back, that a reasonable person would not consider looking into the fact that Bestop may have made a misrepresentation as Tuffy claims is evidenced in the confidentiality agreement. At most, the Court finds that a reasonable person would have discovered the alleged misrepresentation within a year.  The statute of limitations, therefore, bars any claim of fraud after 2004.

The Court therefore dismisses the fraud counterclaim with prejudice.

## IV.   Conclusion

For the above-stated reasons, the Court GRANTS Bestop's motions to dismiss Tuffy's breach of contract and fraud counterclaims.

So ordered.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  January 15, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 15, 2014, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer

24