UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Bestop, Inc.,

    Plaintiff,

v.

Tuffy Security Products, Inc.,

    Defendant.
_____/

Case No. 13-10759

Honorable Nancy G. Edmunds

**OPINION AND ORDER ACCEPTING AND ADOPTING THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING CLAIM CONSTRUCTION [68]**

This matter comes before the Court on the Special Master's Report and Recommendation regarding claim construction. The Special Master issued his report on December 4, 2014. (Dkt. 68.) Defendant filed its objections on December 15, 2014. (Dkt. 72.) Plaintiff does not object and filed a motion to adopt the report on December 15, 2014. (Dkt. 71.)[1] The Special Master's Report and Recommendation has been reviewed *de novo*. Fed. R. Civ. P. 53(f)(3), (f)(4). Because the Court finds that the Special Master appropriately constructed the claims, the Court ACCEPTS AND ADOPTS the Special Master's Report and Recommendation.

**I.   Background**

    **A.  The Patent**

---

[1] Plaintiff's motion to adopt the Special Master's report also asked the Court to set a case management order and to compel Defendant to answer certain discovery requests. These matters were addressed in a status conference held in chambers on January 13, 2015. The Court issued a scheduling order that same day. (Dkt. 78.)

Plaintiff accuses Defendant of infringing U.S. Patent No. 6,065,794 (the '794 patent). The patent is titled "Security Enclosures for Open Deck Vehicles." "The patent generally relates to storage management devices, termed 'trunk enclosures,' that partition and establish a lockable storage trunk in the rear of convertible vehicles." (Report and Recommendation ¶ 2.)

### B. The Claims

The parties contest the construction of the term "means for securing" within the claims of the '794 patent. This term is found in independent claims 4, 5, and 16. Claim 4 is representative of the asserted claims.

> In a vehicle having a load deck, deck sidewalls, and a tailgate, a security enclosure for installation within the load deck thereof, the security enclosure comprising:
>
> a first panel extending between the deck sidewalls and sloping upwardly toward the tailgate from a first end adjacent the load deck to a distal second end,
>
> a second panel coupled to the second end of the first panel and extending therefrom toward the tailgate; and
>
> *means for securing* the second panel in a position relative to the first panel so that an enclosed space is defined by the first and second panels, the tailgate, the load deck, and the deck sidewalls, wherein the deck sidewalls include wheel wells for supporting the second panel in a generally horizontal position.

('794 Patent, col. 9, lns. 1-14)(emphasis added).

### C. Special Master's Report and Recommendation

The Special Master recommended that "means for securing" should be constructed as:

> The first and second panels are attached in order to create a secured enclosure when the tailgate of the vehicle is closed. The two panels may be rigidly attached; or they may be rotatably attached using a hinge, in combination with

at least one bolt lock, locking pin and bore, locking bar, or equivalent structure for holding the panels in a fixed position when the tailgate of the vehicle is closed.

(Report and Recommendation ¶ 7.)

In making this recommendation, the Special Master noted that the parties agree that the term "means for securing" is expressed in "means-plus-function" format. As a result, the construction of the term is governed by 35 U.S.C. § 112, ¶ 6. Construction of a "means-plus-function" limitation requires "identifying the claimed function and determining the corresponding structure or act disclosed in the specification." *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1430 (Fed. Cir. 2000). "When multiple embodiments in the specification correspond to the claimed function, proper application of § 112, ¶ 6 generally reads the claim element to embrace each of those embodiments." *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1329 (Fed. Cir. 2004)(quoting *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1258 (Fed. Cir. 1999)).

The Special Master found four structures that correspond to the "means for securing" recited in the claims: (1) a "bolt lock," which is described as the "first embodiment;" (2) a "locking pin and bore," designated as the "second embodiment;" (3) a "locking bar," identified as the "third embodiment;" and (4) a "rigid attachment" between the two panels. The Special Master further noted that the patent explains that "more than a single securing means may be used in keeping with the claimed invention." (Report and Recommendation ¶ 7)(citing '794 patent, col. 8, lns. 16-31.)

## II.  Defendant's Objections

Defendant objects to the Special Master's inclusion of rigid attachment as a "means for securing the second panel in a position relative to the first panel . . . ." Defendant argues

3

that the "means for securing" must be limited to a releasable lock mechanism (e.g., the bolt lock, locking pin and bore, or locking bar referred to in the specification).

Defendant's objections can generally be classified into two groups. The first group concerns the language of the claim. Defendant argues that the inclusion of rigid attachment as a "means for securing" results in a construction that: (1) is not in accord with the language of the claim; (2) is unclear and inconsistent with the claim; (3) ignores the claim's preamble; (4) ignores the fact that the mobility function is not a means for securing the panels; and (5) ignores the recitation of "wherein the deck sidewalls include wheel wells for supporting the second panel in a generally horizontal position . . . ." The second group concerns the prosecution history of the claim. Defendant argues that Plaintiff disavowed or disclaimed rigid attachment as a "means for securing" the two panels under the doctrine of prosecution disclaimer.

### A. Defendant's Language-Based Objection

Although Defendant's first objection is comprised of five separate arguments, each is based essentially on the same premise. Defendant points out that the claims require both (1) "a second panel *coupled* to the second end of the first panel and extending therefrom toward the tailgate;" and (2) "a *means for securing* the second panel in a position relative to the first panel so that an enclosed space is defined. . . ." (emphasis added). Defendant argues that the Special Master's construction confuses these two functions. Defendant believes that the rigid attachment embodiment recited in the specification refers to an alternative way of "coupling" the two panels of the device to each other. It is not a "means of securing" the two panels.

4

Defendant is incorrect. Like the bolt lock, locking pin and bore, or locking bar described in the specification, a rigid attachment between the two panels is also "a means for securing the second panel in a position relative to the first panel so that an enclosed space is defined . . . ." Defendant's focus on the coupling requirement is misplaced. To "couple" one object to another is to connect, join, or fasten them together in some way. *See* Webster's Third New International Dictionary 521 (1986) (defining "couple" as "to fasten together"); Oxford English Dictionary, *available at* http://www.oed.com/view/Entry/43130 (accessed January 30, 2015) (defining "couple" as "to fasten or link together (properly in pairs); to join or connect in any way"). It is true that two panels that are rigidly attached are indeed "coupled" to one another. But this does not foreclose rigid attachment from being a "means for securing." The panels are coupled to one another whenever they are connected to each other, either by hinge or otherwise. That they are coupled though does not explain how they are secured in such a way that an "enclosed spaced is defined by the first and second panels, the tailgate, the load deck, and the deck sidewalls . . . ." The rigid attachment between the two panels is disclosed in the specification as a means to secure the panels in this way. ('794 patent, col. 8, lns. 16-35.) It is not merely described as an alternative method to couple the two panels together.

Furthermore, this interpretation does not run afoul of the presumption "that the use of different terms 'connotes different meanings.' " *Welker Bearing Co. v. PHD, Inc.*, 528 F. Supp. 2d 683, 698 (E.D. Mich. 2007) aff'd, 550 F.3d 1090 (Fed. Cir. 2008)(quoting *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)). Under the Special Master's construction of the claim, "coupling" and "means for

5

securing" are not given the same meaning, and each still performs distinct functions. The Special Master's construction does not confuse "coupling" and "means for securing."

### B. Defendant's Prosecution-Based Objection

Defendant's argument that Plaintiff disclaimed rigid attachment as a "means for securing" the two panels during patent prosecution fares no better than its language-based objection. The Special Master persuasively addressed this argument in his report and the Court has little to add to his analysis. Defendant believes that when the patent examiner imposed a restriction requirement during the prosecution of the '794 patent, Plaintiff restricted the scope of the term "means for securing" by acquiescing to the examiner's request. "A patent applicant's response to a restriction requirement may be used to interpret patent claim terms or as a source of disclaimer." *Uship Intellectual Properties, LLC v. United States*, 714 F.3d 1311, 1315 (Fed. Cir. 2013) To restrict the construction of a claim, however, the response must be "a clear and unmistakable disclaimer of claim scope." *Id.*

As discussed in the Special Master's report, Plaintiff's acquiescence to the examiner's restriction requirement fails to constitute such a clear and unmistakable disclaimer. Neither the applicant nor the examiner made any statements concerning the construction of the term "means for securing," and the applicant made no arguments or statements in response to the examiner's request. In this situation, there was no clear and unmistakable disclaimer of claim scope. *See Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1319 (Fed. Cir. 2006).

### III. Conclusion

For the foregoing reasons, the Court ACCEPTS AND ADOPTS the Special Master's Report and Recommendation in full. Plaintiff's motion to adopt the Special Master's report [71] is GRANTED as to it relates to that request. The discovery issues also raised in Plaintiff's motion have been addressed in the Court's January 12, 2015 scheduling order. (Dkt. 78.)

SO ORDERED.

        s/Nancy G. Edmunds  
        Nancy G. Edmunds  
        United States District Judge

Dated: February 4, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 4, 2015, by electronic and/or ordinary mail.

        s/Carol J. Bethel  
        Case Manager