UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Bestop, Inc.,

    Plaintiff,

v.

Tuffy Security Products, Inc.,

    Defendant.

_____/

Case No. 13-10759

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [118]; AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [133]**

This matter comes before the Court on the parties' cross-motions for summary judgment. Plaintiff Bestop, Incorporated alleges that Defendant Tuffy Security Products, Incorporated has infringed its patent by making and selling products embodying the patented invention. Defendant has moved for summary judgment of invalidity and non-infringement. Plaintiff has moved for summary judgment of infringement and also argues that Defendant's invalidity and unenforceability defenses must be dismissed for lack of evidentiary support. For the reasons stated below, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED.

**I.    Background**

The patent at issue, U.S. Patent No. 6,065,794 ('794 Patent), is titled "Security Enclosure for Open Deck Vehicles." The patent relates to storage management devices, or "trunk enclosures," that partition and establish a lockable trunk in the rear of convertible

vehicles (such as Jeeps). Plaintiff is the current assignee of the '794 Patent. Figures from the '794 Patent are shown below.

 

(Dkt. 1-2, at 5-6.)

Defendant is a manufacturer and seller of theft protection products for vehicles. It sells tailgate security enclosures for Jeeps and other vehicles. Defendant sells a number of security enclosures that vary slightly from one another in order to fit different vehicle makes and models. The accused products at issue are Part Nos. 275, 282, 286, 296, 297, 299, and 310. An image and drawing of Part No. 282 are shown below.

 

(Dkt. 24-3, at 6,9.)

2

Plaintiff argues that each of the limitations of Claims 4, 5, 16, and 25 of the '794 Patent is literally present or present under the doctrine of equivalents in each of the accused products (with the exception of Part No. 297, for which Plaintiff alleges Claims 4 and 5 are literally present or present under the doctrine of equivalents).

On February 4, 2015, the Court accepted and adopted the Special Master's report and recommendation on claim construction. The Special Master construed the term "means for securing," as found in Claims 4, 5, and 16 of the '794 Patent, to mean:

> The first and second panels are attached in order to create a secured enclosure when the tailgate of the vehicle is closed. The two panels may be rigidly attached; or they may be rotatably attached using a hinge, in combination with at least one bolt lock, locking pin and bore, locking bar, or equivalent structure for holding the panels in a fixed position when the tailgate of the vehicle is closed.

(Dkt. 80, at 2-3.) This was the only term construed by the Court.

## II.  Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III. Analysis

The parties' cross motions focus on two main issues: invalidity and infringement. The Court thus addresses those issues rather than considering each motion separately.

### A. Invalidity

Defendant moves for summary judgment of invalidity on the grounds that the '794 Patent is invalid as anticipated, 35 U.S.C. § 102, obvious, 35 U.S.C. § 103, and lacking a written description. 35 U.S.C. § 112. Plaintiff argues these defenses should be dismissed because Defendant has failed to support them. The Court agrees with Plaintiff.

Anticipation and the written description requirement are questions of fact that Defendant must prove by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) (invalidity must be proved by clear and convincing evidence); *In re Gleave*, 560 F.3d 1331, 1334-35 (Fed. Cir. 2009) (anticipation is a question of fact); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962-63 (Fed. Cir. 2002) (the written description requirement is a question of fact). And obviousness is a question of law based on underlying factual findings—the scope and content of the prior art, the differences between the claims and the prior art, the level of ordinary skill in the art, and objective indicia of nonobviousness—that also must be proved by clear and convincing evidence. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012).

Plaintiff asserts—and Defendant does not appreciably contest[1]—that the only support offered for Defendant's invalidity defenses is its supplemental response to an interrogatory:

---

[1] Plaintiff spends seven pages arguing that this interrogatory answer is Defendant's only support for its invalidity defenses. (Dkt. 118, at 21-27.) Defendant fails to respond to this argument and points to no other place in the record where it supported its invalidity defenses. (Dkt. 139.)

4

> **Interrogatory No. 5**: If Tuffy alleges that Bestop's Patent-in-Suit is unenforceable or invalid for failure to meet the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112, state with particularity the basis for each and every one of such assertions, including all material facts supporting each and every one of such assertions.
>
> **Answer dated March 24, 2014, Supplemental Answer dated June 9, 2014 and 3rd Supplemental Answer dated February 12, 2015 (all the same)**:
>
> [Objections omitted]
>
> \* \* \*
>
> Without waiving and subject to its objections, Tuffy states that until Bestop discloses (by way of claim charts) specifically what structure of the accused products Bestop asserts infringes the claims of the patent-in-suit. Tuffy also asserts that the Motion for Summary Judgment filed in this case makes it clear that Bestop's asserted claim construction cover Schlachter and other prior art (either in identical form or as obvious variations of this prior art.)

(*See, e.g.*, Dkt. 118, at 23-24.)

This interrogatory answer has no connection to the proof elements of any of Defendant's invalidity defenses, and it does not identify any document or other piece of evidence in support of Defendant's assertions. No reasonable jury could find anticipation, a lack of written description, or the underlying factual findings necessary for obviousness based on the evidence identified in this answer.

Defendant's arguments in its motion for summary judgment are equally unavailing. Defendant first argues that Claim 16 is invalid because it is anticipated by U.S. Patent No. 4,938,519 to Schlacther, U.S. Patent No. 5,564,768 to Saffold, or U.S. Patent No. 5,564,768 to Canfield. (Dkt. 133, at 13-14.) "A claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 21 (Fed. Cir. 2012) (citation omitted). To

5

show anticipation, Defendant provides only two figures from the prior patents and a statement from the examiner of the Saffold Patent. (Dkt. 133, at 12-14.) Defendant does not explain how the figures or the statement show that "each and every limitation" of Claim 16 is found in the prior patents, and seemingly ignores multiple elements of Claim 16 in making its argument. For example, Claim 16 requires that the first panel "extend[] between the deck sidewalls and extend[] upwardly . . ." and that the second panel have "opposing sloped edges for engaging the wheel wells." ('794 Patent, col. 10, lns. 18-25.) Defendant does not mention either of these elements in its anticipation argument. No reasonable jury could find anticipation based on this evidence.

Defendant similarly fails to support its obviousness defense. Defendant argues that Claims 4 and 5 are invalid as obvious. (Dkt. 133, at 14-18.) "A patent claim is invalid as obvious if an alleged infringer proves that the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time of invention to a person having ordinary skill in the art." *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1303 (Fed. Cir. 2015) (citing 35 U.S.C. § 103). Defendant's argument on the obviousness of Claims 4 and 5 relies on its belief that Claim 16 is anticipated by prior art. (*See* Dkt. 133, at 18 ("Accordingly, since claim 16 is invalid as anticipated by prior art, claims 4 and 5, which only add an obvious slope to the first panel are invalid as being an obvious variation of claim 16.").) The Court has just decided, however, that no reasonable jury could find Claim 16 is anticipated by prior art based on the evidence presented. Furthermore, the only evidence Defendant has offered in support of its argument regarding obviousness is an excerpt from the patent prosecution of the '794 Patent where the patent examiner rejected a different claim as anticipated. (Dkt. 133, at 16-

6

17.) It has provided no evidence of the scope and content of the prior art, the differences between claims and the prior art, the level of ordinary skill in the art, or the objective indicia of nonobviousness. *Kinetic Concepts*, 688 F.3d at 1360. No reasonable jury could make the underlying factual findings necessary for a successful obviousness defense based on this evidence.

Defendant's final invalidity defense—lack of written description—is also unsupported.[2] Defendant argues that the '794 Patent specification does not disclose or enable an embodiment including a rigid attachment. (Dkt. 133, at 18-20.) As has been addressed multiple times in this litigation, Defendant is incorrect. The term "means for securing" includes a rigid attachment of the two panels of the invention. (Dkt. 80.) The '794 Patent specification states that "the invention may be simplified by . . . rigidly attaching the top panel to the forward panel and, hence, foregoing the mobility provided by the hinge." ('794 Patent, col. 8, lns. 31-35.) That is sufficient to disclose an embodiment. *See Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1375 (Fed. Cir. 2012) ("The fact that an embodiment is disclosed in a single sentence is not a license to ignore

---

[2] It is unclear whether Defendant is arguing lack of written description, lack of enablement, or both. Although both are found in § 112(a), they are distinct. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344 (Fed. Cir. 2010). The written description requirement tests "whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) (internal quotation omitted). In other words, whether the patent specification shows that the "inventor actually invented the invention claimed." *Ariad*, 598 F.3d at 1351. Enablement, on the other hand, tests whether "the specification of a patent . . . teach[es] those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012) (internal quotation omitted). Regardless of which of the two requirements (or both) Defendant believes the '794 Patent violates, its argument fails.

that disclosure. . . . A disclosed embodiment is a disclosed embodiment, no matter the volume of ink required to adequately describe it."). No reasonable jury could find a lack of written description here.[3]

### B. Infringement

The parties also move for summary judgment on the issue of infringement of the '794 Patent by the accused devices. To find infringement, a two-step analysis is required. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). First, the Court must determine the "meaning and scope of the patent claims asserted to be infringed." *Id.* In February 2015, the Court adopted the Special Master's report and recommendation on claim construction construing the term "means for securing"—the only contested term in the asserted claims. (Dkt. 80.) Second, the Court must compare the accused device(s) to the properly construed claim language. *Id.*

To prove infringement, Plaintiff "must show that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents." *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id.* To find infringement under the doctrine of equivalents, "any differences between the claimed

---

[3] Defendant takes issue with the fact that the Patent does not contain a drawing of a rigid-attachment embodiment. (Dkt. 133, at 19-20.) But Defendant cites no authority stating that a drawing is required to satisfy either the written description or enablement requirements. In fact, "drawings" are addressed by a separate statutory section, which states that "[t]he applicant shall furnish a drawing *where necessary* for the understanding of the subject matter sought to be patented." 35 U.S.C. § 113 (emphasis added). A drawing of a rigid attachment between the panels is not necessary to understand that embodiment, especially where the specification directly refers to another drawing in explaining how the rigid attachment embodiment would operate. ('794 Patent, col. 8, lns. 31-35.)

invention and the accused product must be insubstantial." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1346 (Fed. Cir. 2013). Infringement is a question of fact. *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1342 (Fed. Cir. 2014). Summary judgment on a literal infringement claim is therefore appropriate only when "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

### 1. Claim Limitations

Plaintiff contends each limitation of Claims 4, 5, 16, and 25 of the '794 Patent is literally present or present under the doctrine of equivalents in Defendant's accused products—Part Nos. 275, 282, 286, 296, 297, 299, and 310 (with the exception of Part No. 297, for which Plaintiff alleges Claims 4 and 5 are present). Claim 4 recites:

> 4. In a vehicle having a load deck, deck sidewalls, and a tailgate, a security enclosure for installation within the load deck thereof, the security enclosure comprising:
>
> a first panel extending between the deck sidewalls and sloping upwardly toward the tailgate from a first end adjacent the load deck to a distal second end,
>
> a second panel coupled to the second end of the first panel and extending therefrom toward the tailgate; and
>
> means for securing the second panel in a position relative to the first panel so that an enclosed space is defined by the first and second panels, the tailgate, the load deck, and the deck sidewalls, wherein the deck sidewalls include wheel wells for supporting the second panel in a generally horizontal position.

('794 Patent, col. 9, lns. 1-14.)

Claim 5 differs only in that the first panel is "disposed at an angle permitting the first panel to be generally flush with a seat" rather than requiring that the deck sidewalls include

wheel wells for supporting the second panel. (*Id.* at col. 9, lns. 15-29.) Claim 16 differs slightly from Claim 4, primarily to include a limitation that the second panel have opposing sloped edges for engaging the wheel wells to support the second panel in a generally horizontal position. (*Id.* at col. 10, lns. 13-29.) In addition, Claim 16 describes the first panel as "extending upwardly" rather than "sloping upwardly toward the tailgate." (*Id.*) Lastly, Claim 25 (dependent on Claim 16) recites: "the security enclosure of Claim 16 wherein the first panel is disposed at an angle permitting the first panel to be generally flush with a seat." (*Id.* at col. 10, lns. 61-63.)

To support its motion for summary judgment of infringement, Plaintiff points to Defendant's product images, installation instructions, and statements made by Defendant throughout discovery. Plaintiff contends that no reasonable jury could find that each element of the asserted claims is not present in the accused products. Defendant admits there are a number of "uncontested" similarities between the parties' products, such as that the accused products "have a pair of panels" and are "used in the rear of a Jeep vehicle." (Dkt. 158, at 19.) Defendant moves for judgment of non-infringement, however, arguing primarily that the accused products do not meet the "means for securing" limitation. The Court proceeds with its infringement analysis by comparing the accused devices to the asserted claims.[4]

### a. Security Enclosure

---

[4] Because of the significant overlap in the asserted claims, the Court addresses similar or identical claim limitations together, rather than addressing each claim individually.

All asserted claims include a limitation reciting a security enclosure for installation in a vehicle having a load deck, deck sidewalls with respective wheel wells, and a tailgate. Defendant does not argue that this limitation is absent in the accused products. The installation instructions for the accused products at issue are titled either "Tailgate Security Enclosure" or "Deck Enclosure." (*See, e.g.*, Dkt. 152-3, at 2; Dkt. 152-6, at 2.) And Defendant's corporate representative, in discussing Part No. 297, confirmed:

> Q: Exhibit 10, [Part No.] 297, encloses a space; correct?
> A: Yes
> Q: And that space is defined by a first panel, front panel; correct?
> A: Yes.
> Q: And a second panel, the lid; correct?
> A: Yes.
> Q: The tailgate; correct?
> A: Yes.
> Q: The load deck; correct?
> A: Yes.
> Q: And sidewalls on both sides, which include the wheel wells; correct?
> A: Yes.

(Dkt. 162, at 34-35.) Defendant similarly described each accused Part. (*See* Dkt. 162, at 28 (describing Part No. 275); Dkt. 162, at 22-25 (describing Part No. 282); Dkt. 162, at 31-32 (describing Part No. 286); Dkt. 162, at 34 (describing Part No. 296); Dkt. 162, at 37-39 (describing Part No. 299); Dkt. 162, at 39-41 (describing Part No. 310).) The Court concludes that no reasonable jury could find that the products at issue do not meet this limitation.

### b. First and Second Panels

The claims at issue additionally include a limitation reciting a first, or vertical panel that extends between the deck sidewalls, sloping or extending upwardly toward the tailgate or a distal second end from a first end adjacent the load deck. Defendant's founder and president testified that Part No. 299 "has a front panel that is mounted to the deck" and that "tilts back towards the rear of the vehicle." (Dkt. 161, 37-38.) (*See also* Dkt. 152-10 (installation instructions for Part No. 299.) Part No. 282—the two-door version of Part No. 299, (*see* Dkt. 161, at 37)—similarly has a front vertical panel mounted to the deck between the deck sidewalls that tilts back towards the rear of the vehicle. (Dkt. 152-3 (installation instructions for Part No. 282); Dkt. 152-5 (same).) And Defendant's installation instructions for Part Nos. 275 and 286 show a vertical panel between the sidewalls that tilts back toward the rear of the vehicle. (Dkt. 152-6; Dkt. 152-7.) Defendant similarly testified that Part Nos. 296, 297, and 310 each have a vertical panel secured or mounted to the deck between the sidewalls, that tilts back towards the rear of the vehicle. (Dkt. 161, at 33 (describing Part No. 296); Dkt. 161, at 36 (describing Part No. 297); Dkt. 161, at 39 (describing Part No. 310).) (*See also* Dkt. 152-8 (installation instructions for Part No. 296); Dkt. 152-9 (installation instructions for Part No. 297); Dkt. 152-11 (installation instructions for Part No. 310).) The Court finds that no reasonable jury could find that this limitation is not present in the accused products at issue.

Another limitation in the claims asserted recites a second (generally horizontal) panel coupled to the second end of the first panel and extending therefrom toward the tailgate. Again, Defendant does not argue that its products do not meet this limitation. The Court finds no reasonable jury could conclude that the accused products do not embody this limitation. (*See e.g.,* Dkt. 152-4 (showing second panel for Part No. 282); Dkt. 152-6

12

(showing second panel for Part No. 275); Dkt. 152-7 (showing second panel for Part No. 286); Dkt. 152-8 (showing second panel for Part No. 296); Dkt. 152-9 (showing second panel for Part No. 297); Dkt. 152-10 (showing second panel for Part No. 299); Dkt. 152-11 (showing second panel for Part No. 310).)

Claim 16 additionally recites the second panel having opposing sloped edges for engaging the wheel wells to support the second panel in a generally horizontal position. Defendant has testified that for Part No. 296 the second panel, or "lid," is secured to the first panel by fasteners and has "a turn-down area" at the sides, which comes into contact with the sides of the tub, back behind the wheel wells. (Dkt. 161, at 33-35.) (*See also* Dkt. 152-8.) Defendant also testified regarding Part No. 299 as follows:

> **Q: And then it has a lid that's secured to that front panel?**
> A: Yes.
> **Q: On the lid, there are some curved areas ... Do you see that?**
> A: Yes.
> **Q: How do those parts contact the vehicle or the vehicle tub or whatever?**
> A: They conform to the vehicle tub, the geometry of the vehicle tub.
> **Q: That's where the wheel wells are?**
> A: On the front -- well yes. The wheel isn't directly underneath where that is, but it's close.
> **Q: And that's where the wheel well comes in, and it matches up, conforms?**
> A: Yes.

(Dkt. 161, at 37-38.) (*See also* Dkt. 152-10.) The Court finds—and Defendant does not contest—that no reasonable jury could find this limitation is not present in the accused products. (*See also* Dkt. 162 at 25-27 (describing Part No. 275); Dkt. 161, at 21-23 (describing Part No. 282); Dkt. 152-5, at 5 (showing sloped edges on second panel for Part No. 282); Dkt. 162, at 31-32 (describing Part No. 286); Dkt. 152-7, at 7 (showing sloped

13

edges on second panel for Part No. 286); Dkt. 161, at 38-40 (describing Part No. 310); Dkt. 152-11, at 5 (showing sloped edges on second panel for Part No. 310).)

### c. Generally Flush with the Seat

Claims 5 and 25 of the '794 Patent additionally recite the first panel as being disposed at an angle permitting it to be generally flush with a seat. Defendant contends "a photograph showing the gap between the front panel of the accused devices and the rear seat was included with Defendant's motion for summary judgment" and that "Plaintiff knows that the front panel of the accused devices is not generally flush with the seat." (Dkt. 158, at 22.) The Court is unaware of the photograph to which Defendant is referring, and has not seen any photograph in the record showing a gap between the front panel of the accused devices and the rear seat. With respect to Part Nos. 282 and 286, Defendant has testified that the first panel is "generally" or "close to" flush against the seat. (Dkt. 161, at 41-43.) In light of this sworn testimony, the two-sentence argument in Defendant's supplemental brief is not sufficient to raise a genuine issue of fact and the Court finds no reasonable jury could find the front panels in accused Part Nos. 282 and 286 are not disposed at an angle permitting them to be generally flush with the seat.

As for Part Nos. 275, 296, 297, 299, and 310, however, the record does not clearly show there is no genuine issue of fact as to whether the first panel is disposed at an angle permitting it to be generally flush with the seat of the vehicle. The Court finds a reasonable jury could find that this claim limitation is not found in these products. Because summary judgment of infringement is only appropriate when "no reasonable jury could find that *every* limitation recited ... is or is not found in the accused device," *Bai*, 160 F. 3d at 1353

(emphasis added), summary judgment of infringement of Claims 5 and 25 must be denied for both parties with regard to Part Nos. 275, 296, 297, 299, and 310.

### d. Means for Securing

Finally, each asserted claim includes the "means for securing" limitation, previously construed by this Court. Plaintiff's position is that Defendant has admitted this limitation for each of its accused products. (Dkt. 152, at 11.) That is, Defendant has admitted that for all of the accused products (except Part No. 275, discussed below), the first and second panels are "bolted directly together;" Plaintiff argues that bolted together is a fixed position. (*Id.*) Because the Court has construed the term "means for securing" to include "rigidly attached" panels, Plaintiff contends the accused products meet this limitation.

Defendant makes several arguments contending the accused devices do not embody the "means for securing" limitation. Defendant's most recent briefs argue that the "means for securing" limitation requires two panels "in combination with" at least one bolt lock, locking pin and bore, locking bar, or equivalent structure for holding the panels in a fixed position when the tailgate of the vehicle is closed. (*See, e.g.*, Dkt. 158, at 10-12.) Because none of the accused devices have such structure, Defendant contends there can be no infringement. (*Id.*) Defendant is incorrect. The "means for securing" embodiment does not require a bolt lock, locking pin and bore, locking bar, or equivalent structure if the first and second panels are rigidly attached. As noted above, "means for securing" has been construed by this Court as follows:

> The two panels may be rigidly attached; or they may be rotatably attached using a hinge, in combination with at least one bolt lock, locking pin and bore, locking bar, or equivalent structure for holding the panels in a fixed position when the tailgate of the vehicle is closed.

15

(Dkt. 80, at 2-3.) The phrase "in combination with" modifies only a rotatably attached means for securing, *not* a rigidly attached means for securing. As this Court previously noted, the Special Master found four *separate* structures that correspond to "means for securing" as recited in the claims: a bolt lock, a locking pin and bore, a locking bar, and a rigid attachment. (*Id.*) Defendant's argument fails, as a rigid attachment need not be in combination with one of the three other listed means for securing (or equivalent structure) for holding the panels in a fixed position when the tailgate of the vehicle is closed.

Second, Defendant argues the "means for securing" limitation is not present because the second panel of the accused devices need not be rigidly connected to the first panel. (Dkt. 133, at 21-24.) Defendant argues the second panel is independently secured by being "wedged" in the body of the vehicle, and the first panel merely acts as a cover to prevent access from the front of the vehicle. (*Id.*) Since the first panel merely acts as a cover, Defendant argues the attachment of the two panels "does not have to be a rigid connection." (*Id.* at 21.) The first panel will perform its function of covering access "so long as there are no large gaps between the first panel, the body of the vehicle, and the second panel." (*Id.* at 24.)

The Court does not find this argument availing. Defendant's assertion that there "does not have to be" a rigid connection between the first and second panels and that there could be small gaps between the first panel, the body of the vehicle, and the second panel is irrelevant to the Court's analysis of whether Defendant's accused products infringe Plaintiff's patent. The Court is required to compare the properly construed claims with the devices accused of infringing—not with hypothetical devices Defendant argues would serve

the same purpose (or with Defendant's patents that purportedly would allow for such hypothetical devices[5]). *See Markman*, 52 F.3d at 976.

Finally, Defendant contends the accused devices do not embody the "means for securing" limitation because their panels are not rigidly connected. (Dkt. 139, at 22.) Defendant claims the panels are not rigidly connected "since the connection between the forward panel and the top panel of the accused devices can [be] manipulated to accommodate variances by simply loosening [] hand-tightened wing nuts and moving the two panels relative to one another." (*Id.*) The fact that the panels can be adjusted by loosening wing nuts, however, does not mean the panels are not rigidly attached; once the panels are bolted together, Defendant has explained that the panels "are designed to operate by maintaining this relationship as long as the device is installed in the vehicle." (Dkt. 118-5, at 8.) And although Part No. 275 differs in that the first and second panels include a slide mounting mechanism (Dkt. 163, at 76), Defendant's founder and president has testified that the first and second panels are each "secured to the [same] side" mounting panels, which are "secured to the vehicle." (Dkt. 161, at 23-24.) (*See also* Dkt. 152-6 (showing installation instructions for Part No. 275.) Defendant has further admitted with regard to Part Nos. 282 and 286, "the accused products have the first panel and second ('top' or 'lid') panel *fixedly* connected to one another." (Dkt. 24-3, at 9. (emphasis

---

[5] Defendant points to its patents (including its recently obtained Patent No. 9,039,062) to defend against Plaintiff's infringement allegations. However, the issuance of a patent "merely raises a presumption of the existence of a patentable difference, not a presumption of non-infringement." *Freeman v. Altvater*, 66 F.2d 506, 512 (8th Cir. 1933). That is, a "[p]atentable difference does not of itself tend to negative infringement." *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1581 (Fed. Cir. 1984) (quoting *Herman v. Youngstown Car Mfg. Co.*, 191 F. 579, 584-85 (6th Cir. 1911)). The Court proceeds with its analysis by comparing the accused devices to the asserted claims.

added).) (*See also* Dkt. 24-11 (noting in assembly instructions for Part No. 282 that fasteners "rigidly attach panels to form fixed L-shape").) The Court finds no reasonable jury could conclude that the accused products are not rigidly attached in order to create a secured enclosure when the tailgate of the vehicle is closed, thus meeting the "means for securing" limitation.

In sum, no reasonable jury could find that each limitation of asserted Claims 4, 5, 16, and 25 is not literally present in Defendant's accused Part Nos. 282 and 286. In addition, no reasonable jury could find that all limitations of Claims 4 and 16 are not found in accused Part Nos. 275, 296, 299, and 310. And no reasonable jury could find that all limitations of Claim 4 are not found in accused Part No. 297. Summary judgment of literal infringement is thus appropriate for all accused parts.[6]

### C. Affirmative Defenses

Finally, Plaintiff argues that it is entitled to judgment on Defendant's affirmative defenses A, B, C, D, E, F, and J, and that these defenses should be dismissed. In response, Defendant has withdrawn defenses A, B, and C. (Dkt. 139, at 27.) These defenses are accordingly dismissed. Defendant, however, argues that it has adequately supported defenses D, E, F, and J. Affirmative defense E (non-infringement) and F (invalidity) have been addressed above, and are accordingly dismissed.

Defendant argues it has adequately supported the remaining defenses because Plaintiff "has admitted" that it "simply copied Defendant's product and then wrongfully

---

[6] Plaintiff need only prove infringement of one claim in order for judgment of infringement to be appropriate. *Panduit Corp. v. Dennison Mfg. Co., Inc.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987) ("One is liable for patent infringement if one claim be infringed.").

accused Defendant of infringing the patent in suit." (Dkt. 139, at 27.) In support, Defendant points to two of Plaintiff's answers to Defendant's first request for admissions. (*Id.*) However, Plaintiff did not admit that it copied Defendant's products in these answers, and the Court does not see how these answers possibly support Defendant's argument. Defendant has not offered any other support for its affirmative defenses D (unclean hands) or J (reserving "all other defenses"). The Court will thus grant Plaintiff's motion with respect to these affirmative defenses, as well.

### D. Injunctive Relief

The Court recognizes Plaintiff's request for injunctive relief pursuant to Section 283 of the Patent Code, but is unable to assess the merit of that request in light of Plaintiff's failure to address the traditional four-factor framework set forth in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) (rejecting notion that an injunction automatically follows a determination that a patent has been infringed).

## IV. Conclusion

For the reasons stated, Plaintiff's motion for summary judgment of validity and infringement is GRANTED. Plaintiff's motion for summary judgment against Defendant's affirmative defenses A, B, C, D, E, F, and J is GRANTED and those defenses are DISMISSED. Defendant's motion for summary judgment is DENIED. Finally, in light of Plaintiff's failure to substantiate its request for injunctive relief, that request is DENIED WITHOUT PREJUDICE.

                                      s/Nancy G. Edmunds  
                                      Nancy G. Edmunds  
                                      United States District Judge

Dated: December 16, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 16, 2015, by electronic and/or ordinary mail.

        s/Carol J. Bethel
        Case Manager